UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHM REGATTA POINTE, LLC,

Plaintiff,

CASE No.: 8:23-cv-00505-KKM-TGW

v.

S/V SEA DREAMS, a 1995 model 42-foot Island Packet sailboat bearing Hull Identification Number TDLUS018A595, and U.S. Coast Official Number 1031082, its engines, tackle, rigging, sails, furniture, and appurtenances, in rem,

Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came on for consideration upon the Plaintiff's Motion for Default Judgment (Doc. 25). The defendant has not filed a response in opposition and the time to do so has passed. For the reasons discussed, I recommend that the motion be granted.

I.

In this matter, the plaintiff, SHM Regatta Pointe, LLC, is a company that provides slips, dockage, and storage for vessels. On July 20,

2021, Bryan Pyle, signed an agreement with the plaintiff to dock the vessel at issue in this matter for one-year, beginning August 1, 2021, and ending on August 1, 2022 (Doc. 1, p. 3, ¶11). However, Mr. Pyle did not remove the vessel after the agreement had expired and, further, he failed to remove it after the plaintiff made multiple demands for him to do so (id., ¶¶16–17).

Thus, on March 7, 2023, the plaintiff filed a Complaint in which it seeks to foreclose a maritime lien and recover damages for maritime trespass pursuant to 46 U.S.C. § 31301 (see Doc. 1). The plaintiff then moved for it to be appointed as the substitute custodian and further moved for issuance of a warrant of arrest in rem (see Docs. 7, 10). I subsequently granted both requests and the Clerk of Court issued the Warrant of Arrest for the vessel (see Docs. 15, 16, 17). Thus, on March 27, 2023, the U.S. Marshals Service arrested the vessel and placed the plaintiff in exclusive possession of the vessel as its ordered substitute custodian (see Doc. 18).

The Notice of Action in rem was then published in accordance with the Supplemental Admiralty Rules and Section 3(c) and (g) of the Admiralty and Maritime Practice Manual of the Middle District of Florida (Docs. 19, 20). Plaintiff's counsel also sent notice of the action to the owners, Bryan Pyle and Min Pyle, to the two known addresses on April 5, 2023 (Doc. 21-1). Those letters were returned as "unclaimed" (Doc. 21, pp. 1–2). On

2

May 4, 2023, counsel sent another notice to the defendant owners, with the various court filings, which was delivered but no response was returned (id., p. 2; Doc. 21-2). On May 9, 2023, the plaintiff requested that the Clerk enter default against the vessel (Doc. 22). Thus, on May 18, 2023, the Clerk entered default against the vessel (Doc. 23).

On June 29, 2023, the plaintiff filed a Motion for Default Judgment (Doc. 25) and the declaration of Paul Van Ryn, the general manager of SHM Regatta Pointe, LLC (see Doc. 25-1). In that motion, the plaintiff requests that (1) the court enter default judgment against the vessel; (2) that the plaintiff be awarded the following amounts: damages for trespass in the amount of $7,713.33, custodial expenses in the amount of $23,380.00 for services provided during March 23, 2023, through June 30, 2023, custodial expenses of $233.86 per day for services provided from July 1, 2023, to the date the vessel is released from arrest, $2,500.00 in custodia legis services paid to the U.S. Marshals Service, and pre-judgment interest at the rate provided by 28 U.S.C. § 1961; (3) that the United States Marshals Service be ordered to sell the vessel; (4) that the court declare that the plaintiff may credit bid up to the amount of the judgment entered; and (5) that the court provide for the plaintiff to recover additional amounts as administrative priority payments for custodia legis services and expenses

3

provided after June 30, 2023, to the date when the court releases the vessel from arrest (Doc. 25, pp. 15–16).

II.

Pursuant to Rule 55(b)(2), Fed.R.Civ.P., a party may seek from the court a default judgment for the amount of the damages caused by the defaulting party. Before entering a default judgment, the court must ensure that it has jurisdiction over the claims and the parties and, further, that the well-pleaded factual allegations of the complaint adequately state a claim upon which relief may be granted. Thus, the Eleventh Circuit discussed the standards governing entry of default judgment in Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1244–45 (11th Cir. 2015):

> When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed.R.Civ.P. 55(b)(2). Because of our "strong policy of determining cases on their merits," however, default judgments are generally disfavored. In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir.2005) .... Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

4

> ... [W]e have ... interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")
>
> ....
>
> When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 ... (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 ... (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556 ...).

Furthermore, "[w]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." System Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY, 242 F.3d 322, 324 (5th Cir. 2001).

Under the Federal Maritime Lien Act, "a person providing necessaries to a vessel" may assert a lien against the vessel and sue in rem to enforce the lien. 46 U.S.C. § 31342(a); see also Bradford Marine, Inc. v. M/V Sea Falcon, 64 F.3d 585, 589 (11th Cir. 1995) (noting that the term "necessaries" has been liberally construed to include "'what is reasonably

5

needed in the ship's business'") (internal citation omitted). "A maritime lien is a 'special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises.'" Dresdner Bank AG v. M/C Olympia Voyager, 465 F.3d 1267 (11th Cir 2006). Maritime liens differ from other common law liens in that a maritime lien is "not simply a security device to be foreclosed if the owner defaults," rather, a maritime lien converts the vessel itself into the obligor and, thus, allows injured parties to proceed against the vessel directly. See Crimson Yachts v. Betty Lyn II Motor Yacht, 603 F.3d 864, 868 (11th Cir. 2010) (quoting Amstar Corp. v. S/S ALEXANDROS T., 664 F.2d 904, 908–09 (4th Cir. 1981). Thus, "'[a] maritime lien gives its holder a property right in a vessel, and the proceeding *in rem* is . . . a means of enforcing the property right.'" Id. (internal citation omitted).

To establish a maritime lien in a vessel, the plaintiff must establish that (1) the good or service qualifies as a "necessary"; (2) the good or services was provided to the vessel; (3) on the order of the owner or agent; and (4) the necessaries must be supplied at a reasonable price. Barcliff, LLC v. M/V Deep Blue, IMO No. 9215359, 876 F.3d 1063, 1068 (11th Cir. 2017).

The plaintiff has established that it has a maritime lien in the defendant vessel. Thus, the plaintiff provided necessaries to the defendant

6

vessel in the form of storage and amenities. See Inbesa Am., Inc. v. M/V Anglia, 134 F.3d 1035, 1037, n.2 (11th Cir. 1998) (recognizing dockage as a necessary to establish a maritime lien). Further, the plaintiff has provided—and continues to provide—dockage and amenities pursuant to the contract agreement signed by Mr. Pyle (Doc. 1, p. 5, ¶¶23–24). Finally, the necessaries appear to be a reasonable price as Mr. Pyle agreed to the price in the contract at issue. Robbie's of Key W. v. M/V Komedy III, 470 F. Supp. 3d 1264, 1268–69 (S.D. Fla. 2020); (id., p. 3, ¶11).

As indicated, the plaintiff seeks damages for trespass in the amount of $7,713.33, custodial expenses in the amount of $23,380.00 for services provided during March 23, 2023, through June 30, 2023, custodial expenses of $233.86 per day for services provided from July 1, 2023, to the date the vessel is released from arrest, $2,500.00 in custodia legis services paid to the U.S. Marshals Service, and pre-judgment interest at the rate provided by 28 U.S.C. § 1961.

As set forth in the declaration of Paul Van Ryn, the general manager of SHM Regatta Pointe, LLC, the plaintiff has sustained damages of $7,713.33 as a result of the defendant vessel's trespass from August 2, 2022, through March 22, 2023 (Doc. 25-1, p. 3, ¶5). This amount is comprised of damages from trespass from August 2, 2022, through February

7

28, 2023, for $6,965.70 and additional damages of $747.63 due to the vessel's continuing trespass from March 1, 2023, through March 22, 2023 (id., pp. 2–3, ¶¶3, 4). Thus, this constitutes the amount prior to the actual arrest of the vessel, as "[t]he vessel's arrest effectively stopped the accrual of trespass damages and started the accrual of custodia legis services/expenses" (id., p. 3, ¶7). The plaintiff is entitled to recover this amount as part of the necessary service that is part of the maritime lien. Bradford Marine, Inc. v. M/V Sea Falcon, supra, 64 F.3d at 589.

The plaintiff also requests $23,380.00 as an administrative priority payment for custodia legis services provided during the period of March 23, 2023, through June 30, 2023 (Doc. 25, p. 14). Further, the plaintiff requests $233.86 per day for services provided to the defendant vessel from July 1, 2023, to the date the vessel is released from arrest (id., p. 16). In his declaration, Mr. Ryn states that these amounts are for wet storage, custodial services, and electricity (Doc. 25-1, p. 4, ¶12). The plaintiff is entitled to these costs as well since services or property advanced to preserve the defendant vessel under seizure, which have been furnished upon authority of the court, are permitted as custodia legis expenses. Associated Metals and Minerals Corp. v. Alexander's Unity MV, 41 F.3d 1007, 1018 (5th Cir. 1995); SHM Burnt Store, LLC v. M/Y Dorothy Ann, 2:20-CV-507-SPC-

8

MRM, 2022 WL 2291681 at *2 (M.D. Fla. June 24, 2022) (citing Associated Metals); (see Doc. 15) (providing that all reasonable expenses for keeping and safeguarding the defendant vessel are administrative expenses of custodia legis for which the Custodian has a priority claim against the defendant vessel or the sales proceeds). Moreover, the plaintiff shall be entitled to priority payment of its custodia legis expenses. Dresdner Bank AG v. M/V Olympia Voyager, supra, 465 F.3d at 1272–73; (see Doc. 15).

Finally, the plaintiff requests $2,500.00 for the services of the U.S. Marshals Services, plus pre-judgment interest at the rate provided by 28 U.S.C. § 1961 (Doc. 25, p. 16). The plaintiff is permitted to recover these costs as well. See Fed. R. Civ. P. 54; 28 U.S.C. §§ 1920, 1921; See also Robbie's of Key W. v. M/V Komedy III, supra, 470 F. Supp. 3d at 1271 ("The appropriate interest rate to compensate Plaintiff for the use of the funds is the same rate that applies to post-judgment interest according to 28 U.S.C. § 1961.").

### III.

For the foregoing reasons, I recommend that:

1. That the Plaintiff's Motion for Default Judgment (Doc. 25) be granted and that default judgment be entered against the defendants.

2. That the plaintiff be awarded $7,713.33 in damages.

3. That the plaintiff be awarded $23,380.00 <u>custodia legis</u> expenses for services provided to the vessel from March 23, 2023, through June 30, 2023.

4. That the plaintiff be awarded $233.86 per day for services provided to the defendant vessel from July 1, 2023, to the date the vessel is released from arrest.

5. That the plaintiff be awarded $2,500.00 plus pre-judgment interest at the rate provided by 28 U.S.C. § 1961 for <u>custodia legis</u> expenses for services provided by the U.S. Marshals Service.

6. That the U.S. Marshal be directed to conduct the sale of the defendant vessel, her engines, tackle, apparel, furniture, equipment, appurtenances, and all other necessaries thereunto appertaining and belonging to the defendant vessel, in accordance with Rule E(9) of the Supplemental Admiralty Rules and the Local Admiralty Rules and Maritime Practice Manual 5(r).

7. That the plaintiff be granted permission to credit bid its judgment at the public sale of the defendant vessel.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: September 13, 2023.

### NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.